## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | | |
|---|---|---|
| **PETER HANLON; DAVID WORMAN; NANCY TREHUB; JEFFREY SACKS; MASS GUN SHOP INC. d/b/a PIONEER VALLEY ARMS; GUN OWNERS' ACTION LEAGUE, INC.; NATIONAL RIFLE ASSOCIATION OF AMERICA,** | ) ) ) ) ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **Civil Action No.: 1:25-cv-12325** |
| | ) | |
| **ANDREA CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts; TERRENCE M. REIDY, in his official capacity as Secretary of the Executive Office of Public Safety and Security of the Commonwealth of Massachusetts,** | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Peter Hanlon, David Worman, Nancy Trehub, Jeffrey Sacks ("Individual Plaintiffs"), Mass Gun Shop Inc. d/b/a Pioneer Valley Arms ("Pioneer Valley Arms"), Gun Owners' Action League, Inc. ("GOAL"), and the National Rifle Association of America ("NRA") (collectively, "Plaintiffs"), by and through the undersigned attorneys, file this Complaint for declaratory and injunctive relief

against the above-captioned Defendants' enforcement of the Commonwealth's ban on common firearms it deems to be "assault-style," which deprives Plaintiffs and the law-abiding citizenry of the Commonwealth of their Second Amendment right to keep and bear arms. Defendants are sued in their official capacities as state and local officials responsible for oversight, administration, and enforcement of the Commonwealth's laws and regulations governing the firearms approved for possession, purchase, sale, and transfer within the Commonwealth. In support of their Complaint, Plaintiffs allege as follows:

## INTRODUCTION

1.    The Second Amendment to the Constitution of the United States guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Supreme Court has made clear that the Second amendment guarantees an "individual right to possess and carry weapons in case of confrontation," which includes the right to possess arms "in the home," *Dist. of Columbia v. Heller*, 554 U.S. 570, 592, 635 (2008), and the "right to 'bear' arms in public for self-defense," *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 33 (2022). The Second Amendment is incorporated through the Fourteenth Amendment's Due Process Clause and is fully applicable to the Commonwealth. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750, 791 (2010).

2.      Last year, the Commonwealth enacted onerous firearms legislation that imposes sweeping arms bans, magazine restrictions, registration requirements, and licensing preconditions that are burdensome and unprecedented in our Nation's historical tradition. *See* An Act Modernizing Firearm Laws, Chapter 135 of the Acts of 2024 (the "Act").

3.      Plaintiffs challenge the Act's ban on so-called "assault-style" firearms and their "copies." The Act bans the sale and acquisition of semiautomatic firearms that are commonly possessed and used for lawful purposes, including self-defense in the home, in violation of Plaintiffs' Second Amendment Rights. The Commonwealth mislabels as "assault-style" firearms dozens of makes and models of common semi-automatic rifles, shotguns, and handguns and criminalizes their possession, ownership, sale, or other transfer.

4.      The Commonwealth's "assault-style" firearms ban, as implemented, overseen, and administered by Defendants, infringes the right of the Commonwealth's citizens to keep and bear arms that are in common use for lawful purposes. Consequently, the "assault-style" firearms ban is unconstitutional.

5.      Plaintiffs acknowledge contrary First Circuit precedent. *Worman v. Healey*, 922 F.3d 26 (1st Cir. 2019), *abrogated on other grounds by Bruen*, 597 U.S. 1; *see Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024); *Capen v. Campbell*, 708 F. Supp. 3d 65, 70 (D. Mass. 2023), *aff'd* 134 F.4th 660 (1st Cir.

2025). But those cases were wrongly decided, and Plaintiffs initiate this litigation to vindicate their Second Amendment rights and have *Worman*, *Ocean State Tactical*, and *Capen* overruled.

6.     Justices of the United States Supreme Court have expressly contemplated challenges to bans on so-called "assault-style" firearms such as the AR–15, noting that "[a]dditional petitions for certiorari will likely be before th[e] Court shortly and . . . th[e] Court should and presumably will address the AR–15 issue soon, in the next Term or two." *Snope v. Brown*, No. 24–203, 605 U.S. ___, at 1–3 (June 2, 2025) (Kavanaugh, J., statement respecting denial of certiorari). The lawful possession of "the most popular rifle in America," the AR–15, and other now-banned "assault-style" firearms is of "critical importance to tens of millions of law-abiding" citizens "throughout the country," including those in the Commonwealth. *See Snope v. Brown*, No. 24–203, 605 U.S. ___, at 1–8 (June 2, 2025) (Thomas, J., dissenting from denial of certiorari).

7.     Plaintiffs request declaratory and permanent injunctive relief prohibiting Defendants from continued violations of the Individual Plaintiffs', Pioneer Valley Arms, and GOAL's and the NRA's members' Second Amendment rights, in addition to attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343.

9.      This Court has authority to grant the remedies Plaintiffs seek under 28 U.S.C. §§ 1651, 2201, 2202, and 42 U.S.C. §§ 1983 and 1988.

10.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A)–(C) because at least one defendant resides in this district, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and because at least one plaintiff resides in this district. Venue is proper in this division because at least one plaintiff resides in this division.

## PARTIES

11.     Plaintiff Peter Hanlon ("Hanlon") is a citizen of the United States and the Commonwealth. He is a retired Captain in the Massachusetts Environmental Police residing in Barnstable County, Massachusetts. Mr. Hanlon currently holds a valid License to Carry, which permits him to purchase, transfer, and possess firearms in the Commonwealth, and he is not prohibited from purchasing or possessing firearms under state or federal law. He desires to purchase, transfer, and possess one or more firearms prohibited by the Act. But for the Act's firearms prohibition and Defendants' enforcement action, Mr. Hanlon would purchase, transfer, and possess, for self-defense and other lawful purposes, one or more of the prohibited firearms. The prohibited semiautomatic firearms that Mr. Hanlon would otherwise purchase,

transfer, and possess are in common use for self-defense and other lawful purposes, are widely possessed and sold both inside (prior to the Act) and outside of the Commonwealth, and are thus constitutionally protected arms that cannot be banned. Mr. Hanlon is a member of Plaintiff GOAL and Plaintiff NRA.

12.    Plaintiff David Worman ("Worman") is a citizen of the United States and the Commonwealth. He is an orthopedic surgeon residing in Middlesex County, Massachusetts. Dr. Worman currently holds a valid License to Carry, which permits him to purchase, transfer, and possess firearms in the Commonwealth, and he is not prohibited from purchasing or possessing firearms under state or federal law. He desires to purchase, transfer, and possess one or more firearms that are restricted under the Act's prohibitions on certain firearms, which are being enforced by Defendants. But for the Act's firearms prohibition and Defendants' enforcement action, Dr. Worman would purchase, transfer, and possess, for self-defense and other lawful purposes, one or more of the prohibited firearms. The prohibited semiautomatic firearms that Dr. Worman would otherwise purchase, transfer, and possess are in common use for self-defense and other lawful purposes, are widely possessed and sold both inside (previous to the Act) and outside of the Commonwealth, and are thus constitutionally protected arms that cannot be banned. Dr. Worman is a member of Plaintiff GOAL.

6

13.    Plaintiff Nancy Trehub ("Trehub") is a citizen of the United States and the Commonwealth. She is a retired prosecutor residing in Middlesex County, Massachusetts. Ms. Trehub currently holds a valid License to Carry, which permits her to purchase, transfer, and possess firearms in the Commonwealth, and she is not prohibited from purchasing or possessing firearms under state or federal law. She desires to purchase, transfer, and possess one or more firearms that are restricted under the Act's prohibitions on certain firearms, which are being enforced by Defendants. But for the Act's firearms prohibition and Defendants' enforcement action, Ms. Trehub would purchase, transfer, and possess, for self-defense and other lawful purposes, one or more of the prohibited firearms. The prohibited semiautomatic firearms that Ms. Trehub would otherwise purchase, transfer, and possess are in common use for self-defense and other lawful purposes, are widely possessed and sold both inside (previous to the Act) and outside of the Commonwealth, and are thus constitutionally protected arms that cannot be banned. Ms. Trehub is a member of Plaintiff GOAL and Plaintiff NRA.

14.    Plaintiff Jeffrey Sacks ("Sacks") is a citizen of the United States and the Commonwealth. He is an oral and maxillofacial surgeon residing in Middlesex County, Massachusetts. Dr. Sacks currently holds a valid License to Carry, which permits him to purchase, transfer, and possess firearms in the Commonwealth, and he is not prohibited from purchasing or possessing firearms under state or federal

law. He desires to purchase, transfer, and possess one or more firearms that are restricted under the Act's prohibitions on certain firearms, which are being enforced by Defendants. But for the Act's firearms restrictions and Defendants' enforcement thereof, Dr. Sacks would purchase, transfer, and possess, for self-defense and other lawful purposes, one or more of the firearms which are prohibited from sale by the Act's firearms restrictions. The prohibited semiautomatic firearms that Dr. Sacks would otherwise purchase, transfer, and possess are in common use for self-defense and other lawful purposes, are widely possessed and sold both inside (previous to the Act) and outside of the Commonwealth, and are thus constitutionally protected arms under the Second Amendment that cannot be banned. Dr. Sacks is a member of Plaintiff GOAL and Plaintiff NRA.

15.    Plaintiff Pioneer Valley Arms is a corporation organized under the Commonwealth's laws with its office in Hampden County, Massachusetts. Pioneer Valley Arms is a firearms retailer licensed to sell and transfer firearms under federal law and the law of the Commonwealth. Pioneer Valley Arms is licensed to and does sell firearms to law-abiding members of the public. But for the Commonwealth's ban on "assault-style" firearms, Pioneer Valley Arms would make available for sale to all of its law-abiding customers the commercially available firearms in common use for self-defense and other lawful purposes and sell and transfer them to law-abiding customers, including, but not limited to, those firearms sought by Individual

Plaintiffs. Pioneer Valley Arms brings this action on behalf of itself and its customers to vindicate both its Second Amendment right to sell firearms and the Second Amendment rights of its customers and would-be customers to acquire and possess firearms not available for sale because of the "assault-style" firearms ban, including the Individual Plaintiffs, and GOAL's and the NRA's members. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 192–97 (1976); *see also Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 210 (4th Cir. 2020) (holding that firearms store had standing to bring Second Amendment challenge to redress its economic injury); *id*. at 216 (holding that firearms store had third-party standing to bring Second Amendment challenge on behalf of its customers and potential customers under *Craig*). Each of Pioneer Valley Arms' owners are members of Plaintiff GOAL and Plaintiff NRA, and Pioneer Valley Arms is a corporate member of NRA Business Alliance.

16.     Plaintiff Gun Owners' Action League, Inc. ("GOAL") is a membership organization focused on promoting and defending the fundamental right of ordinary citizens to keep and bear arms for lawful purposes, including, but not limited to, competition, recreation, hunting, and self-defense. GOAL's principal place of business is located in Westboro, Massachusetts. The "assault-style" firearms ban enacted as part of the Act directly impacts GOAL's central mission as well as its members. GOAL has thousands of members who reside in the Commonwealth, including the Individual Plaintiffs, who wish to purchase, transfer, and possess the

prohibited firearms for self-defense and other lawful purposes. GOAL brings this action on behalf of itself and its members in the Commonwealth, including the Individual Plaintiffs, who have been, are being, and will continue to be adversely and irreparably harmed by Defendants' enforcement of the "assault-style" firearms ban. Like the Individual Plaintiffs, all of Plaintiff GOAL's members would have standing to sue in their own right. Neither the claims that Plaintiff GOAL assert nor the relief it requests requires the participation of individual members in the lawsuit. *See, e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 198–201 (2023).

17.     Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's oldest civil rights organization and is widely recognized as the largest and foremost defender of Second Amendment rights. The NRA was founded in 1871 by Union veterans—a general and a colonel—who, based on their experiences in the Civil War, sought to promote firearms marksmanship and expertise among the citizenry. Today the NRA is a traditional membership association and America's leading provider of firearms marksmanship and safety training for civilians and law-enforcement alike. The NRA has millions of members across the nation, including Plaintiff Mr. Hanlon, Plaintiff

Dr. Sacks, Plaintiff Ms. Trehub, and thousands more in the Commonwealth, including many who reside in this district. These millions of members rely on the NRA to protect their fundamental rights, including through litigation on behalf of its members. And safeguarding members' rights and interests regarding firearms aligns with the mission of the NRA: "[t]o protect and defend the Constitution of the United States." The "assault-style" firearms ban enacted as part of the Act directly impacts the NRA's central mission as well as its members. The NRA has members who reside in the Commonwealth, including Plaintiff Mr. Hanlon, Plaintiff Dr. Sacks, and Plaintiff Ms. Trehub, who wish to purchase, transfer, and possess the prohibited firearms for self-defense and other lawful purposes. The NRA brings this action on behalf of itself and its members in the Commonwealth, including Plaintiff Mr. Hanlon, Plaintiff Dr. Sacks, and Plaintiff Ms. Trehub, who have been, are being, and will continue to be adversely and irreparably harmed by Defendants' enforcement of the "assault-style" firearms ban. Like the Individual Plaintiffs, all of Plaintiff NRA's members residing in the Commonwealth would have standing to sue in their own right. Neither the claims that Plaintiff NRA assert nor the relief it requests requires the participation of individual members in the lawsuit. *See, e.g.*, *Hunt*, 432 U.S. at 343; *see also Students for Fair Admissions*, 600 U.S. at 198–201.

18.    Defendant Andrea Campbell ("Campbell") is the Attorney General of the Commonwealth with the authority and responsibility to enforce the

Commonwealth's criminal laws, including the challenged laws, on behalf of the Commonwealth. Defendant Campbell is sued in her official capacity.

19.    Defendant Terrence M. Reidy ("Reidy") is the Secretary of the Commonwealth's Executive Office of Public Safety and Security ("EOPSS"). Defendant Reidy, as Secretary, is responsible for overseeing his Department of Criminal Justice Information Services ("DCJIS"), making him responsible for regulating and enforcing the Commonwealth's laws and regulations related to the sales, transfer, possession, and ownership of firearms, including firearms cards, permits, and licenses. *See, e.g.*, Mass. Gen. Laws Ann. ch. 140, §§ 129B, 131 (West).[1] Defendant Reidy is sued in his official capacity.

## THE ACT'S UNCONSTITUTIONAL SWEEP

## I.    The Commonwealth already comprehensively regulates the firearms it permits Plaintiffs to purchase, sell, transfer, and possess.

20.    Even before enactment of the Act, the Commonwealth strictly regulated the sale, transfer, rental, and lease of all "firearms" and those authorized to do so. *See, e.g.*, *United States v. McNulty*, 684 F. Supp. 3d 14, 20 (D. Mass. 2023).

21.    Under the Act, in order for any ordinary, law-abiding citizen of the Commonwealth to exercise the fundamental right to keep and bear arms enshrined in the Second Amendment, the citizen must obtain either a Firearm Identification

---

[1] Unless otherwise noted, citations to the Massachusetts General Laws are to the General Laws as amended by Chapter 135 of the Acts of 2024.

Card ("FID Card") or a License to Carry ("LTC") (each a "firearms license" and collectively "firearms licenses"). A FID Card allows the citizen "to purchase, transfer, possess and carry rifles and shotguns that are not large capacity or semi-automatic, and the ammunition therefore." Mass. Gen. Laws Ann. ch. 140, § 129B(c) (West). A LTC permits the citizen "to purchase, rent, lease, borrow, possess and carry firearms, including large capacity firearms and ammunition therefor," and including handguns, *id*. § 131(a), as well as those arms a FID Card holder is entitled to purchase, transfer, possess, and carry, *id*. § 131(c).

22.    Individuals in the Commonwealth with a FID or LTC, like the Individual Plaintiffs, and GOAL's and the NRA's members, are generally required to purchase and transfer firearms through state and federally licensed firearms dealers, like Pioneer Valley Arms, in face-to-face transactions, or face serious criminal penalties. *Id*. § 122.

23.    To sell firearms in the Commonwealth, dealers must obtain a Firearms Dealer License ("FDL"), which entitles its holder to "sell, rent, lease, purchase or otherwise transfer firearms and ammunition" to appropriate licensed buyers, recipients, or transferees. *Id*. § 122(a). With limited exceptions, any person without a FDL who "sells, rents, leases or otherwise transfers a firearm" is subject to both civil and criminal penalties. *Id*. § 128.

24.    Unlawful sales, transfers, or distributions of firearms are also felonies punishable by mandatory minimum terms of imprisonment. *Id.* ch. 269, § 10E (providing criminal penalties for all persons who unlawfully distribute, sell, or transfer firearms); *see also id.* ch. 140, § 128 (providing criminal penalties for FDL holders who unlawfully sell or otherwise furnish firearms).

## II.    The Act bans a wide variety of common arms as vaguely defined "assault-style" firearms.

25.    The Act imposes novel restrictions on the firearms available for lawful possession, acquisition, sale, or other transfer within the Commonwealth, and further restricts firearms retailers' ability to dispose of current inventory and to acquire and register future inventory.

26.    Chief among these restrictions is the Act's general prohibition on the possession, ownership, offer for sale, sale or other transfer of any firearm newly defined as "assault-style" unless it is subject to an exemption. Mass. Gen. Laws Ann. ch. 140, § 131M(a) (West); *see id.* § 131(a) (prohibiting LTC holders from transferring, possessing, or carrying "assault-style" firearms unless an exemption applies).

27.    The ban on transfers or possession of "assault-style" firearms exempts law enforcement officers or qualified retired law enforcement officers, federal, state, and local law enforcement agencies, as well as federally licensed manufacturers (but solely for the sale or transfer in other states). *Id.* § 131M(e).

14

28.    Under the Act, "assault-style firearm" is broadly defined to include the following firearms:

    a.    [A] semiautomatic, centerfire rifle with the capacity to accept a detachable feeding device and includes at least 2 of the following features:

        i.    a folding or telescopic stock;

        ii.    a thumbhole stock or pistol grip;

        iii.    a forward grip or second handgrip or protruding grip that can be held by the non-trigger hand;

        iv.    a threaded barrel designed to accommodate a flash suppressor or muzzle break or similar feature; or

        v.    a shroud that encircles either all or part of the barrel designed to shield the bearer's hand from heat, excluding a slide that encloses the barrel.

    b.    [A] semiautomatic pistol with the capacity to accept a detachable feeding device and includes at least 2 of the following features:

        i.    the capacity to accept a feeding device that attaches to the pistol outside of the pistol grip;

        ii.    a second handgrip or a protruding grip that can be held by the non-trigger hand;

        iii.    a threaded barrel capable of accepting a flash suppressor, forward handgrip or silencer; or

        iv.    a shroud that encircles either all or part of the barrel designed to shield the bearer's hand from heat, excluding a slide that encloses the barrel.

    c.    [A] semiautomatic shotgun that includes at least 2 of the following features:

     i.       a folding or telescopic stock;

     ii.      a thumbhole stock or pistol grip;

     iii.     a protruding grip for the non-trigger hand; or

     iv.     the capacity to accept a detachable feeding device.

d.    Any firearm listed on the assault-style firearm roster pursuant to section 131 ¾.[2]

e.    Any of the following firearms, or copies or duplicates of these firearms, of any caliber, identified as: (i) Avtomat Kalashnikov, or AK, all models; (ii) Action Arms Israeli Military Industries UZI and Galil; (iii) Beretta AR70 (SC–70); (iv) Colt AR–15; (v) Fabrique National FN/FAL, FN/LAR and FNC; (vi) SWD M–10, M–11, M–11/9 and M–12; (vii) Steyr AUG; (viii) INTRATEC TEC–9, TEC–DC9 and TEC–22; and (ix) revolving cylinder shotguns including, but not limited to, the Street Sweeper and Striker 12.

*Id*. § 121 ("Assault-style firearm," clauses (a) through (e)).

29.    The new definition of "assault-style" firearm also includes any "copy or duplicate of any firearm" otherwise qualifying under the Act's definition of "assault-style" firearm, unless the "copy or duplicate" was sold, owned and registered prior to July 20, 2016. *Id.* ("Assault-style firearm," clause (f)).

---

[2] The Act, as passed, cross-references "section 128A" in clause (d) of the definition of "assault-style firearm." *See* Chapter 135 of the Acts of 2024, An Act Modernizing Firearm Laws, at SECTION 16. Section 128A is titled "Application of Sec. 131." *Id*. at SECTION 41. But the Act, as republished by Westlaw Precision, cross-references "section 131 ¾" in clause (d) of the definition of "assault-style firearm." Mass. Gen. Laws Ann. ch. 140, § 121 (West). Section 131 is titled "Roster of assault-style firearms; shooting competitions; roster amendments." *See* Chapter 135 of the Acts of 2024, An Act Modernizing Firearm Laws, at SECTION 51. It thus appears that Section 131 ¾ is the more applicable internal cross-reference, as it relates to the assault-style firearms roster.

30.    The definition of "assault-style" firearm exempts: (i) firearms operated by manual bolt, pump, lever or slide action; (ii) firearms rendered permanently inoperable or otherwise rendered permanently unable to be designated as a semiautomatic assault-style firearm; (iii) firearms that are an antique or relic, theatrical prop or other firearm not capable of firing a projectile; (iv) firearms, or replicas or duplicates of such firearms, specified in appendix A to 18 U.S.C. section 922 as appearing in such appendix on September 13, 1994, as such firearms were manufactured on October 1, 1993; or (v) semiautomatic shotguns that cannot hold more than 5 rounds of ammunition in a fixed or detachable feeding device. *Id.* ("Assault-style firearm," clause (g)).

31.    The only "assault-style" firearms permissible under the Act's prohibitions—and not otherwise subject to the clause (g) exceptions above—are those that were "lawfully possessed within the commonwealth on August 1, 2024," by LTC holders or FDL holders. *Id*. § 131M(b).

32.    Violations of the Act's prohibitions on possession, ownership, offer for sale, sale, or other transfer of all such "assault-style" firearms subject offenders to both civil and criminal penalties. *Id*. § 131M(d).

33.    The Act mislabels as "assault-style" firearms dozens of makes and models of semi-automatic rifles, shotguns, and common handguns, each of which is commonly possessed and utilized for self-defense and other lawful purposes by law-

abiding citizens and sold to the same by licensed retailers, and criminalizes their possession, ownership, sale, or other transfer.

34.    The ban was implemented despite the fact that newly defined "assault-style" firearms, including the wildly popular AR–15s, "traditionally have been widely accepted as lawful possessions." *See Staples v. United States*, 511 U.S. 600, 612 (1994). As of June 2025, "AR-15s are legal in 41 of the 50 States, meaning that the States such as [the Commonwealth] that prohibit AR–15s are something of an outlier." *Snope v. Brown*, No. 24–203, 605 U.S. ___, at 1–2 (June 2, 2025) (Kavanaugh, J., statement respecting denial of certiorari). The lawful possession of "the most popular rifle in America," the AR-15, and other now-banned "assault-style" firearms is of "critical importance to tens of millions of law-abiding" citizens "throughout the country," including those in the Commonwealth. *See Snope v. Brown*, No. 24–203, 605 U.S. ___, at 7 (June 2, 2025) (Thomas, J., dissenting from denial of certiorari).

35.    The Act's prohibition on "assault-style" firearms and their "copies," effectively bans the acquisition of semiautomatic firearms that are commonly possessed and used for lawful purposes, including self-defense in the home, proficiency training, competition, recreation, hunting, and collecting.

36.    Like the handgun ban invalidated by the United States Supreme Court in *Heller*, the Act's restrictions on "assault-style" firearms amounts to "a prohibition

of an entire class of 'arms' that is overwhelmingly chosen by American society" for self-defense and other lawful purposes, even in one's home. 554 U.S. at 628–29. Such restrictions violate the Second and Fourteenth Amendments to the United States Constitution.

### III. The mandated "assault-style" firearms roster has yet to be published, adding to the uncertainty surrounding arms that are banned.

37.    In addition to banning the enumerated categories, features, and copies or duplicates of "assault-style" firearms, the Act also bans "[a]ny firearm[s] listed on the assault-style firearm roster." Mass. Gen. Laws Ann. ch. 140, § 121 (West) ("Assault-style firearm," clause (d)).

38.    The Act orders the Secretary of the EOPSS, with the advice of the Firearm Control Advisory Board, to "compile and publish a roster of assault-style firearms banned under section 131M." *Id*. § 131 ¾(a).

39.    The Act further requires the EOPSS to "review, update, and publish" the assault-style firearms roster online at least three times per year, and that copies be sent separately to all FDL holders. *Id.* State firearms licensing authorities are required to "provide information" on the assault-style firearms roster to all FID and LTC holders upon issuance or renewal of their firearms license. *Id*.

40.    The Secretary of the EOPSS has discretion to amend the assault-style firearms roster *upon their own* initiative. *Id*. § 131 ¾(c).

19

41.     As of the filing of this Complaint, the Secretary of the EOPSS has not published the assault-style firearms roster, nor have they announced when such roster may be published or which firearms it will include.

42.     But because the Act confers discretionary authority upon the Secretary of the EOPSS to amend the Approved Firearms Roster "upon their own initiative," FDLs, including Pioneer Valley Arms, have no way of knowing whether a firearm will be approved for sale or how long it will stay approved. *See id*. § 131 ¾(c). The assault-style firearms roster may be published, updated, or amended *at any time* and may immediately prohibit firearms purchasers and retailers from acquiring, purchasing, inventorying, selling, leasing, loaning, or otherwise transferring otherwise lawful firearms. The publication, updating, or amending of an assault-style firearms roster would also prevent Pioneer Valley Arms from disposing of any of their current and future inventory that is listed on the roster.

43.     Like the handgun ban invalidated by the United States Supreme Court in *Heller*, the Act's categorical ban on any "assault-style" firearm included on the yet-to-be published roster is "a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" for self-defense and other lawful purposes, even in one's home. 554 U.S. at 628–29. Such prohibitions violate the Second and Fourteenth Amendments to the United States Constitution.

## COUNT I
### Violation of the Second and Fourteenth Amendments
### 42 U.S.C. §§ 1983 and 1988
### (Right to Keep and Bear Arms)

44.    Plaintiffs incorporate paragraphs 1–43 by reference as if fully set forth herein.

45.    The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II.

46.    The "prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" for self-defense and other lawful purposes, even in one's home, violates the Second and Fourteenth Amendments to the United States Constitution. *Heller*, 554 U.S. at 628–29.

47.    Individual Plaintiffs, GOAL's and the NRA's members, and Pioneer Valley Arms' customers and would-be customers—who are legally eligible to exercise their Second Amendment protected rights—wish to keep and bear constitutionally protected arms for self-defense and other lawful purposes, including those arms now prohibited as "assault-style" firearms.

48.    Because of Defendants' enforcement of the new "assault-style" firearm restrictions in the Act, however, Individual Plaintiffs and GOAL's and the NRA's similarly situated Commonwealth-resident members cannot purchase or possess, and Pioneer Valley Arms is prohibited from selling to them, constitutionally

protected arms without suffering various penalties, including but not limited to criminal liability.

49.    The Act's restrictions on "assault-style" firearms violates the Second Amendment because:

> a.    the broad, vague, and unworkable definition of "assault-style" firearms, subject to interpretation and alteration at any time by the Secretary of the EOPSS's yet-to-be published "assault-style" firearms roster, as described in paragraphs 24–42, infringes conduct protected by the Second Amendment; and
>
> b.    the broad, vague, and unworkable definition of "assault-style" firearms, subject to interpretation and alteration at any time by the Secretary of the EOPSS's yet-to-be published "assault-style" firearms roster, as described in paragraphs 24–42, is not consistent with this Nation's historical tradition of firearms regulation.

50.    Absent the publication of the roster of banned "assault-style" firearms by the Secretary of the EOPSS, Plaintiffs are unable to obtain, stock, purchase, possess, sell, lease, loan, and transfer firearms commonly used for self-defense and other lawful purposes because they cannot know what firearms may soon be classified as "assault-style" firearms.

51.     Requiring Pioneer Valley Arms to guess what firearms fall within the new definition of "assault-style" firearms, and the attendant restrictions thereon, as a precondition to stocking, purchasing, possessing, selling, leasing, loaning, and transferring any semiautomatic firearms, burdens conduct protected by the Second Amendment, and such burdens are not consistent with this Nation's historical tradition of firearms regulation.

52.     Defendant Campbell has enforced, is presently enforcing, and is threatening to continue to enforce the "assault-style" firearm restrictions, and in doing so is actively subjecting and will continue to subject Individual Plaintiffs, the similarly situated customers and would-be customers of Pioneer Valley Arms, and GOAL's and the NRA's similarly situated Commonwealth-resident members to the threat of criminal sanctions for any act or attempted act in violation of the "assault-style" firearm restrictions.

53.     Defendant Reidy has enforced, is presently enforcing, and is threatening to enforce the "assault-style" firearms ban, and in doing so is actively subjecting and will continue to subject Individual Plaintiffs, the similarly situated customers and would-be customers of Pioneer Valley Arms, and GOAL's and the NRA's similarly situated Commonwealth-resident members to the threat of criminal sanctions for any act or attempted act in violation of the "assault-style" firearm ban.

54.     The laws and regulations underlying the "assault-style" firearm prohibitions and the policies and practices designed to enforce the same, prevent the Individual Plaintiffs, GOAL's and the NRA's members, and Pioneer Valley Arms' customers and would-be customers from purchasing, acquiring, receiving, and ultimately possessing "instruments that constitute bearable arms." *Dist. of Columbia v. Heller*, 554 U.S. 570, 582 (2008).

55.     Individuals in the Commonwealth have a right to keep and bear arms for lawful purposes, including but not limited to, buying, selling, transferring, self-manufacturing or assembling, transporting, and practicing safety and proficiency with, firearms under the Second and Fourteenth Amendments to the United States Constitution.

56.     This inalienable, fundamental, individual right to keep and bear firearms includes the right to acquire "assault-style" firearms in common use for lawful purposes—arms that are lawfully sold and possessed throughout the United States—including those specifically defined as "assault-style" firearms and those included in the yet-to-be published "assault-style" firearm roster.

57.     No Founding Era precedent exists for prohibiting the commercial sale of firearms otherwise so widely available to, and in common use for lawful purposes among, ordinary law-abiding-citizens throughout most of the Nation.

58.    Plaintiffs reasonably fear that Defendants will enforce the "assault-style" firearm prohibition against them should they act or attempt to act in violation of its terms.

59.    Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the Commonwealth not disqualified from exercising their fundamental, individual right to keep and bear arms, including Plaintiffs. Defendants' enforcement and implementation of the prohibitions under the "assault-style" firearm restrictions, has and will continue to infringe upon and prevent, by criminal sanctions, the exercise of Plaintiffs' fundamental right to keep and bear arms unless and until redressed through the relief Plaintiffs seek herein. *See* 42 U.S.C. § 1983.

60.    By infringing the right to bear arms in these ways, the Commonwealth's laws and regulations discussed in the foregoing allegations violate the Second Amendment, which applies to Defendants by operation of the Fourteenth Amendment, both facially and as applied to the Individual Plaintiffs, Pioneer Valley Arms, and GOAL's and the NRA's members.

## COUNT II
### Violation of the Fifth and Fourteenth Amendments
### 42 U.S.C. §§ 1983 and 1988
### (Void for Vagueness)

61.    Plaintiffs incorporate paragraphs 1–43 by reference as if fully set forth herein.

62.    In defining "assault-style" firearms, and restricting the possession, acquisition, sale, and transfer of the same, the Commonwealth has broadly prohibited many firearms that are commonly possessed for self-defense and other lawful purposes.

63.    The exact breadth of the restrictions on newly defined "assault-style" firearms cannot even yet be determined because the definition is vague in many respects and would include any firearm potentially listed in the Secretary of EOPSS's yet-to-be-published online roster of banned "assault-style" firearms.

64.    Even when published, the Act orders the Secretary of the EOPSS to publish new or revised rosters at least three times per year. And the Secretary of the EOPSS is provided discretion to amend the roster at any time to add firearms upon their own initiative.

65.    The Act's broad definition of "assault-style" firearms, and the EOPSS's lack of implementing guidance, prevents Plaintiffs from knowing what types, makes, models, designs, or versions of firearms may be subject to new restrictions and prohibitions.

26

66.    Violations of the prohibitions on possession, ownership, offer for sale, sale or other transfer of all "assault-style" firearms subject offenders to both civil and criminal penalties. Mass. Gen. Laws Ann. ch. 140, § 131M(d) (West).

67.    A criminal statute is void for vagueness if it fails to give "fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). The "void for vagueness doctrine . . . serves as a faithful expression of ancient due process and separation of powers principles the framers recognized as vital to ordered liberty under our Constitution." *Sessions v. Dimaya*, 584 U.S. 148, 176 (2018) (Gorsuch, J., concurring in part and concurring in the judgment).

68.    An ordinary person cannot understand, under the Act's definition, what firearms qualify as "assault-style" firearms.

69.    The "assault-style" firearms restrictions in the Act are unconstitutionally vague, and their enforcement must be enjoined.

70.     By enforcing the "assault-style" firearms restrictions, Defendants have deprived Individual Plaintiffs, Pioneer Valley Arms, GOAL and its members, and the NRA and its members of their constitutionally protected due process rights.

### PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

a.     Declare the challenged provisions of the Act's "assault-style" firearms prohibition unconstitutional on their face and as applied to the Individual Plaintiffs, Pioneer Valley Arms, and GOAL's and the NRA's members;

b.     Permanently enjoin Defendants from enforcing the challenged provisions of the Act, Pioneer Valley Arms, and GOAL's and the NRA's members;

c.     Award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988;

d.     Grant such other and further relief as this Court deems just and proper.

Dated: August 21, 2025                     Respectfully submitted,

**LAW OFFICE OF JASON A. GUIDA, ESQ.**

*/s/     Jason A. Guida*
Jason A. Guida
Law Office of Jason A. Guida, Esq.
76 Winn Street, Suite 1A
Woburn, Massachusetts 01801
Telephone: (617) 383-4652
jason@lawguida.com

**BRADLEY ARANT BOULT
CUMMINGS LLP**

/s/    *John Parker Sweeney*
John Parker Sweeney
    (*pro hac vice* forthcoming)
Bradley Arant Boult Cummings LLP
1900 K Street, NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 719-8216
Facsimile: (202) 719-8316
jsweeney@bradley.com

/s/    *James W. Porter, III*
James W. Porter, III
    (*pro hac vice* forthcoming)
Bradley Arant Boult Cummings LLP
1819 5th Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8285
Facsimile: (205) 488-6285
jporter@bradley.com

*Counsel for Plaintiffs*